**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| DCR ENTERPRISES, WILLIAM ROSE, and FIREARMS POLICY COALITION, INC.,<br><br>*Plaintiffs*,<br><br>v.<br><br>RAÚL TORREZ, in his official capacity as Attorney General of New Mexico,<br><br>*Defendant*. | Civil Action No. 1:26-cv-03898 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Firearms Policy Coalition, Inc., DCR Enterprises, and William Rose (collectively, "Plaintiffs"), by and through counsel of record, bring this Complaint against Defendant, Raúl Torrez, in his official capacity as the Attorney General of New Mexico, as the person responsible for enforcing laws infringing the right of law-abiding, peaceable citizens to keep and bear arms for self-defense and other lawful purposes, and allege as follows:

**INTRODUCTION**

1. The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST. amend. II. Under that provision, which is incorporated against the states through the Fourteenth Amendment, *McDonald v. City of Chicago*, 561 U.S. 742, 749–50 (2010); *id.* at 805 (Thomas, J., concurring), individuals have the

constitutionally protected right to keep and bear arms, *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008); *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 10 (2022).

2. Despite this constitutional protection, New Mexico enacted House Bill 129 (HB 129), codified at N.M. Stat. §30-7-7.3. The law imposes a 7-day waiting period on nearly everyone exercising their constitutionally protected right to acquire a firearm.

3. New Mexico gun owners who immediately cleared federal background checks challenged HB 129. *Ortega v. Grisham*, 148 F.4th 1134, 1140 (10th Cir. 2025). The Tenth Circuit held that "[c]ooling-off periods infringe on the Second Amendment by preventing the lawful acquisition of firearms," and that the law "is unconstitutional" "as applied." *Id.* at 1155–56.

4. On remand, the district court granted the *Ortega* challengers' motion for summary judgment. *Ortega v. Grisham*, No. 1:24-cv-00471 (D.N.M. Aug. 26, 2026), Dkt. 126 at 3. That motion had requested declaratory relief that the New Mexico law "is unconstitutional as applied to individuals who pass the background check required under federal law." *Ortega*, D. Ct. Dkt. 120 at 7.

5. Given that the Tenth Circuit has decided that this law is "obviously unconstitutional," as applied to persons who clear their background check within three days, *Ortega*, 148 F.4th at 1155 n.16, and the district court has entered final judgment in favor of the law's challengers, most would expect government officials to uphold their commitment to support the Constitution. *See* N.M. Const. art. XX, § 1.

6. But the New Mexico Department of Justice has taken a different position. It has decided that, although the law is "obviously unconstitutional" in most circumstances, *Ortega*, 148 F.4th at 1156 n.16, it "remains in effect" against everyone except "the two named plaintiffs."

*Federal Judge Rules Against New Mexico's 7-day Waiting Period for Gun Purchases*, SourceNM (Aug. 28, 2026), https://perma.cc/7U44-5SP9.

7. The Plaintiffs here are New Mexico residents who wish to legally purchase firearms without New Mexico's "obviously unconstitutional" law restricting their right to keep and bear arms, a firearms retailer, and an organization that counts them as members. They now seek yet another order from this Court declaring that HB 129 is unconstitutional when the purchasers pass the federal background check, an injunction barring the State from enforcing this law against them, their members, and similarly situated individuals, as well as attorneys' fees and costs under 42 U.S.C. § 1988.

**JURISDICTION & VENUE**

8. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

9. Plaintiffs seek relief under 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. §§1983 and 1988.

10. Venue lies in this Court under 28 U.S.C. § 1391(b).

**PARTIES**

11. Plaintiff **DCR Enterprises** is a federally licensed firearms dealer in Lincoln County, New Mexico. DCR Enterprises is licensed under federal law to engage in the business of selling firearms at retail to law-abiding people who satisfy all applicable federal and state requirements. DCR Enterprises sells, offers for sale, receives, transfers and maintains an inventory of firearms. DCR Enterprises must regularly inform its customers of New Mexico's waiting period law and regularly holds a firearm for at least 7 days for customers who have already passed a federal background check. Plaintiff DCR Enterprises is a member of Plaintiff FPC.

12. Plaintiff **William Rose** is a law-abiding resident of New Mexico. He is eligible under Federal and New Mexico law to purchase firearms. He purchases firearms from licensed firearms dealers three to four times per year. When he does so, he regularly passes his background check almost instantaneously, but then must wait at least 7 days before he can take possession of his new firearm. Plaintiff Rose is a member of Plaintiff FPC.

13. Plaintiff **Firearms Policy Coalition, Inc. ("FPC")** is a nonprofit membership organization incorporated under the laws of Delaware with its principal place of business in Clark County, Nevada, with members across the country, including in New Mexico. FPC works to create a world of maximal human liberty and freedom and to promote and protect individual liberty, private property, and economic freedoms. It seeks to protect, defend, and advance the People's rights, especially but not limited to the inalienable, fundamental, and individual right to keep and bear arms. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. Protecting the right to purchase firearms without unnecessary delay is especially important to FPC and its mission. FPC brings this action on behalf of its members in New Mexico, including William Rose, who intend and desire to exercise their Second Amendment-protected right to purchase a firearm without a delay unrelated to how long it takes for them to clear a background check.

14. Defendant **Raúl Torrez** is sued in his official capacity as the Attorney General of New Mexico. As Attorney General, his duty is to "prosecute" "all actions and proceedings, civil or criminal, in which the state may be a party." N.M. Stat. §8-5-2(B). He has taken an oath to "support the [C]onstitution of the United States." N.M. Const. art. XX, § 1.

## I. The Waiting Period Has Hindered Plaintiffs' Exercise of Second Amendment-Protected Rights.

15. As an FFL, DCR Enterprises has always complied with the law when selling firearms. Many of DCR Enterprises' customers pass their background check to purchase a new firearm almost immediately. Before HB 129, DCR Enterprises could then generally transfer possession of the firearm to the new purchaser that day. Now, DCR Enterprises must wait at least 7 days, even if a purchaser has already passed her background check, before transferring possession of that firearm to her. HB 129 has harmed DCR Enterprises' customers. Customers must now make two trips (some at long distances) to purchase and then, at least 7 days later, take possession of their firearm. Others who have purchased a firearm for self-defense and immediately passed their federal background check must wait at least 7 days before they can take possession of that firearm for self-defense.

16. Plaintiff Rose regularly purchases three to four firearms per year. Before HB 129, when Plaintiff Rose would purchase a firearm from a licensed dealer, he would immediately clear the federal background check and could then take possession of his new firearm. Mr. Rose has purchased firearms since HB 129 has gone into effect. Now, the dealer informs Mr. Rose that he has passed the required background check immediately, but that he cannot take possession of the firearm for at least seven days. Mr. Rose intends to purchase additional firearms in New Mexico in the future, including next month, to celebrate a family birthday. He understands that, so long as Defendant enforces HB 129, he will have to wait an additional seven days to take possession of his new firearm even when he has passed the background check instantly.

## II. Waiting Periods Are Not Part of the Historical Regulation of Firearms.

17. Laws requiring individuals to wait to take possession of firearms for the sake of waiting have no basis in this Nation's history of firearm regulation. It was not until 1923 that any states passed waiting period laws. *Ortega*, 148 F.4th at 1150. And even these laws "were explicitly tied to the time it took to conduct a background check." *Id.* While Congress "briefly required a universal waiting period" in 1993, that lasted only until "the federal government implemented the national instant background check system in 1998." *Id.* (citing *Printz v. United States*, 521 U.S. 898, 902–04 (1997). Now, over 90% of background checks are completed within minutes. U.S. Dep't of Just., *NICS 2025 Operational Report* 6, https://perma.cc/TE2V-7Q7T.

18. In the 1990s, California imposed a waiting period. For the first time, it mentioned that it intended to provide a "cooling off" period for persons seeking to exercise their Second Amendment protected right in purchasing a handgun. *Silvester v. Harris*, 41 F. Supp. 3d 927, 947 (E.D. Cal. 2014), *rev'd and remanded*, 843 F.3d 816 (9th Cir. 2016).

19. Only a handful of states currently have waiting periods. *Ortega*, 148 F.4th at 1140 n.1. Those waiting periods range from three to thirty days. *Id.*

## III. New Mexico Enacts Its Waiting Period Law that Applies to Nearly Everyone.

20. In 2024, New Mexico adopted a waiting period law for the first time. *Ortega*, 148 F.4th at 1140.

21. The legislature argued that the law served two purposes: reducing impulsive gun violence and closing a "perceived loophole in federal law that sometimes permits a purchaser to acquire a gun without completing a background check if the process takes more than three days." *Id.* But the law's wait times are not tied to investigating someone's criminal or mental health, nor

does it apply only to those people whose background check has not been completed within three days.

22. Instead, the law requires a "seven-calendar day waiting period" for most firearm sales and transfers. N.M. Stat. § 30-7-7.3(A). It requires the seller or federal firearms licensee to maintain custody of the firearm "during the entirety of the waiting period." *Id.* § 30-7-7.3(B). And it only exempts a few categories of sales: to buyers with "a valid federal firearm license," buyers with "a valid New Mexico concealed handgun license," law enforcement agencies, and sales between two law enforcement officers or immediate family members. *Id.* § 30-7-7.3(H).

23. Both buyers and sellers may be charged with a misdemeanor if this law is violated. *Id.* § 30-7-7.3(D), (G).

## IV. The Tenth Circuit Has Already Decided that This Law is "Obviously Unconstitutional" in Most Circumstances.

24. Two New Mexico citizens attempted to purchase firearms after this law was passed. *Ortega*, 148 F.4th at 1140. They passed their background checks quickly, but had to wait a week to receive their firearms because of the waiting period. *Id.* They sued to challenge the law.

25. The district court denied their motion for preliminary injunction, holding that the right to "keep and bear" arms does not cover acquiring arms. *Id.* at 1141. Further, it decided that the waiting period was a permissible "commercial condition" on firearm sales. *Id.* Finally, the court decided that the historical tradition of denying certain categories of people the right to possess a firearm was sufficiently analogous to justify an across-the-board waiting period. *Id.*

26. The Tenth Circuit rejected each of these conclusions. First, it explained that a right to keep and bear arms is meaningless without the right to procure those arms. *Id.* at 1143–45. Second, it questioned how courts could apply *Heller*'s dicta regarding "presumptively lawful

regulatory measures," given its "possible tension" with its "underlying holding." *Id.* at 1145–46 (citing *United States v. McCane*, 573 F.3d 1037, 1049 (10th Cir. 2009) (Tymkovich, J., concurring)). In any event, the cooling-off period here is not a regulation of "commercial sale" because it applies to non-commercial transfers, exempts certain commercial sales, and applies across the board. *Id.* at 1146–48. By New Mexico's logic, "an outright ban on commercial sales would also be . . . presumptively lawful." *Id.* at 1148. Finally, the Tenth Circuit decided that laws barring intoxicated people from purchasing firearms, licensing regimes, and group bans on certain disfavored groups owning firearms were not historical analogues that could justify New Mexico's restriction. *Id.* at 1151–54.

27. The Tenth Circuit remanded to the district court, with "instructions to enter injunctive relief consistent with this opinion." *Id.* at 1156. It noted that the cooling-off period was "not obviously unconstitutional" when applied to those persons whose background checks do not clear within three days, because, in its view, that provision "seeks to keep guns out of dangerous individuals' hands in a way that is more consistent with historical traditions." *Id.* at 1156 n.16.

28. The district court entered its injunction barring the Governor and Attorney General from enforcing the waiting period law against the named plaintiffs in that case. *Ortega v. Grisham*, 2026 WL 2600687, at *2 (D.N.M. Aug. 27, 2026).

29. While the Tenth Circuit has already held that this law is "obviously unconstitutional" as applied to persons whose background checks clear within three days, *Ortega*, 148 F.4th at 1156 n.16, New Mexico has said it will continue to enforce the waiting period against everyone except the named plaintiffs in *Ortega*. *See* N.M. Dep't of Public Safety*, 7-Day Waiting Period*, available at https://perma.cc/MW59-YX5L(noting that the order applies to "the two named

plaintiffs only" and that "[t]he waiting period remains in effect for all other firearm purchasers until further notice").

30. Given the multitude of public statements from New Mexico state officials that they intend to continue enforcing the law, and the fact that FPC's members in New Mexico are not protected by the order in *Ortega*, FPC was forced to bring this additional lawsuit challenging N.M. Stat. § 30-7-7.3 on behalf of its members to vindicate their Second Amendment protected rights.

**COUNT ONE**
**Deprivation of Plaintiffs' Rights under the Second and Fourteenth Amendments to the United States Constitution**
**(42 U.S.C. § 1983 & *Ex parte Young*)**

31. Plaintiffs incorporate by reference the above paragraphs as if fully set forth herein.

32. The Second Amendment to the United States Constitution provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." U.S. CONST. amend. II.

33. The Second Amendment is fully applicable to the states through the Fourteenth Amendment. *McDonald*, 561 U.S. at 749–50; *id.* at 805 (Thomas, J., concurring).

34. In *Bruen*, after examining the text of the Second Amendment and the Nation's historical tradition of firearm regulation, the Supreme Court held that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 597 U.S. at 10.

35. *Bruen* reached this conclusion after applying the Supreme Court's two-step framework for analyzing challenges to laws restricting Second Amendment-protected rights. Under that approach, courts "first assess[] whether a law implicate[s] the plain text of the Second Amendment," and if it does, ask "whether the challenged regulation is consistent with the

principles that underpin our regulatory tradition." *Ortega*, 148 F.4th at 1142–43 (quoting *United States v. Rahimi*, 602 U.S. 680, 692 (2024)).

36. The Tenth Circuit applied this same framework to New Mexico's waiting period law here. It decided that the law implicated the plain text of the Second Amendment because "[c]ommon sense dictates that the right to bear arms requires the right to acquire arms." *Ortega*, 148 F.4th at 1143. Other courts have reached similar conclusions: "the right to 'keep and bear arms' surely implies the right to purchase them." *See, e.g.*, *Reese v. ATF*, 127 F.4th 584, 589–90 (5th Cir. 2025). Indeed, it has long been recognized that "the right to keep arms, necessarily involves the right to purchase them." *Andrews v. State*, 50 Tenn. 165, 178 (1871).

37. Finding the Second Amendment implicated here is consistent with how courts treat other constitutionally protected rights. Delayed access to constitutionally protected rights inherently infringes on those rights. *Ortega*, 148 F.4th at 1145 (collecting cases regarding freedom of the press, free exercise of religion, and the right to counsel). And the Second Amendment "is not a 'second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Bruen*, 597 U.S. at 70 (quoting *McDonald*, 561 U.S. at 780).

38. Because waiting periods fall within the plain text of the Second Amendment, the question then becomes whether the government can show that waiting periods are "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17.

39. As discussed above, waiting periods imposed for the sake of waiting are a modern invention. So, New Mexico must show analogous historical restrictions that are "relatively similar" in both "why" and "how" they restrict firearms. *Rahimi*, 602 U.S. at 692. It cannot do so.

40. In *Ortega*, New Mexico offered three purportedly "analogous" types of laws. 148 F.4th at 1150. None can justify this regulation.

41. First, "intoxication" laws, which barred firearm "use and carry by the inebriated" are nothing like the 7-day waiting period imposed here. *Ortega*, 148 F.4th at 1151. Those laws burdened only those who "pose a credible threat to the physical safety of others" based on their inebriation. *Rahimi*, 602 U.S. at 700. But the waiting period in New Mexico applies nearly universally, even to law-abiding citizens who are not dangerous at all. New Mexico cannot treat everyone as dangerous and justify that restriction with laws that treated only *some* people as dangerous. *Ortega*, 148 F.4th at 1152. Second, licensing requirements which apply to some guns, some people, or some places cannot be used to justify a blanket ban on nearly every gun, person, and place. *Id.* Assuming "that all people are dangerous if they desire to exercise their rights unless special circumstances apply is historically out of step." *Id.* at 1153. Finally, laws grounded in "[r]acism, classism, and other discriminatory biases" cannot justify laws like New Mexico's based on "a general fear that all citizens could not be trusted to exercise their rights responsibly." *Id.*

42. Because HB 129 is inconsistent "with the Nation's historical tradition of firearm regulation," *Bruen*, 597 U.S. at 24, it is "obviously unconstitutional," *Ortega*, 148 F.4th at 1156 n.16, in violation of the Second Amendment.

## PRAYER FOR RELIEF

43. WHEREFORE, Plaintiffs respectfully pray for the following relief:

a. Declare that N.M. Stat. § 30-7-7.3 violates the right to keep and bear arms, as-applied to all law-abiding persons who pass a background check in less than 72 hours;

b. Preliminarily and permanently enjoin Defendant, and all those acting in concert or participation with them, from enforcing N.M. Stat. § 30-7-7.3 against Plaintiffs, their customers, and all similarly situated individuals, including FPC's members;

c. Award Plaintiffs attorney's fees and costs pursuant to 42 U.S.C. § 1988, and any other applicable law; and

d. Grant any and all other legal and equitable relief against Defendant as necessary to effectuate the Court's judgment, or as the Court otherwise deems just and proper.

Dated: November 18, 2026

Respectfully submitted,

*/s/ Jordon P. George*

Jordon P. George
George Legal, LLC
PO Box 90722
Albuquerque, NM 87199
Telephone: (505) 977-4445
jordon.georgelegal@gmail.com

Peter A. Patterson*
William V. Bergstrom*
Cooper & Kirk, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
Telephone: (202) 220-9600
Facsimile: (202) 220-9601
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
wbergstrom@cooperkirk.com

*Counsel for Plaintiffs*

**Notice of Good Standing forthcoming*